Parker C. J.
The judgment on the report of the com missioners is alleged to be erroneous, on the ground that the injury complained of in the respondents’ petition, and for which alone the damages have been allowed, is not of the kind intended by the legislature to be provided for in the ar: of incorporation. This objection proceeds upon the assumed ground, that the indemnity provided for by the act Is applicable only to the loss of land which may have been taken and appropriated to the purposes of the corporation, or to the direct and immediate injury to land, occasioned by the increased flowing of the sea water upon it, or the withdrawing of the water, and keeping it from the land, so that the land becomes less valuable on that account.
From a careful examination and analysis of the statute we are unable to give it the narrow construction contended for ; indeed, on a question of compensation for loss accruing to one citizen by means of a privilege given to another by the législature, provisions enacted for indemnity ought to ha.e a liberal construction.
The 6th section of the statute enacts, “ that any person or corporation, sustaining any damage by the building of said dams, bridges or causeways, or from the exercise of any of the rights and powers, herein given to said corporation, may apply &c. to the Court of Common Pleas for the county in which the land lies.” These words are broad enough to embrace every species of damage, and were undoubtedly designed so to extend ; limited only by the nature of the property which is damaged, which must be land. It has been argued from this provision for the locality of processes to be instituted for the recovery of damage, that the legislature intended to indemnify only in the same cases and to the same extent as is provided in the statutes in relation to mills, turnpike roads and highways. But if such were their intent, we must suppose that body exceedingly loose in the use of terms ; which ought not to be supposed. On the contrary, as the subject before them differed in many important respects from the subjects of those statutes, and as there might be injury to property in consequence of the erection of these dams, which could not be brought within their purview, it *41 ought to be presumed, from the general terms used, that indemnity was intended to be given for every kind of actual injury.[1] If any citizen had erected wharves and stores upon his own land, on the margin of public navigable waters which had remained open from the first settlement of the country, there certainly would be nothing unreasonable in providing for his indemnity, whenever on the application of other citizens the public passage should be obstructed by the erection of a bridge or dam ; for although these erections may be, and undoubtedly are, of public convenience, yet they are also intended for the profit and advantage of those who are authorized to make them.
Supposing, as the argument for the petitioners insists, that this is not a case which by the 10th article in the Declaration of Rights would require the legislature to provide for any indemnity to those whose property may be affected, none of their land being actually taken for public use ; yet it will not be denied, that it was within the power and discretion of the legislature to make such a provision ; so that the real question in this view of the case would be, have the legislature made the provision contended for. And we read in the 6th section of the act incorporating the Boston and Roxbury Mill Corporation, that “ any person or corporation sustaining any damage by the building of said dams &c., or from the exercise of any of the rights and powers hereby given to said corporation, may apply to the Court of Common Pleas ” &c. We cannot doubt that the damage sustained by the respondents, as reported by the committee, is of a nature to be embraced by those words. An actual expense is proved to be incurred in the transportation of materials and manufactures from their land and buildings bordering upon the water as it used to flow before the erection of the dam. This is one of those cases which would have been most likely to have attracted the attention of the legislature, if it had oeen specifically laid before them ; and it certainly comes within the spirit, as well as the letter of the statute, as much as a mill which may have been rendered wholly use *42 less by the same obstruction of the water ; and the case o a mill thus injured we understand has been provided for, without any objection on, the ground of right by the corporation.
Much of the argument in this case had reference io cases of possible, • conjectural, and, perhaps, fanciful damages, which may be made the foundation of claims for indemnity, if the present application should succeed.
It has been argued, that as the waters which gave value to the respondents’ land were public waters, which are within the control and at the disposal of the sovereign power of the State ; the legislature had the right, with a view to a greater public convenience, to authorize the obstruction, without taking any care of the interest of those who might have expensive buildings or improvements on the same. The abstract right under these circumstances does not come in question. The legislature have taken care of some private interests in relation to the subject before us ; they had the undoubted right so to do ; and we are called upon to decide only whether the remedy provided is applicable to this case. The same principle has been heretofore recognised by the legislature in a different form, and in relation to subjects not provided for by this act of incorporation. In several of the acts of incorporation for the purpose of building bridges over navigable waters, a duty has been imposed upon the corpora tion to pay a certain compensation to vessels which had occasion to pass through the draw. This is an indirect indemnity to proprietors of wharves and other estates above the bridge, as it was intended to prevent an increase of price for wood and other articles, which became of more difficult transportation by means of the bridge In these cases, the legislature having deemed it of public convenience that the common passage for vessels should be obstructed, sanctioned what would otherwise be a nuisance, but in their discretion took care that those who were liable to suffer by an interruption of an accustomed open passage, should be indemnified by those who were to derive a special benefit from the license granted them.[1] And nothing can be more just than this *43 parental regard to the interests of the citizens.[2] Now the mode prescribed in the act we are considering, is founded upon the same principle, though it is less definite in its application ; it being left to a judicial process to ascertain the persons and the kind of property embraced by the provisions in the statute.
It has been said that owners of vessels, who have heretofore used these waters, will put in their claim ; and that persons owning lands remote from the shore may suppose themselves endamaged by the diminution of the value of their land; and it has even been suggested, that borderers upon the bay, who have never occupied their lands in any connexion with die water, may advance their claim for a loss of what at some future time they might, but for this obstruction, have enjoyed. It is enough at present to say, that all these imaginary cases are entirely different in their nature from the one before us, which rests upon actual damage proved, and that too to land immediately affected by the exercise of powers by the corporation ; and this damage occasioned by the subduction of a natural privilege to that land. Taking this ground for our decision in this case, we are not apprehensive of any unreasonable construction of the statute hereafter, in favor of claims of a different nature ; and we believe no anxiety need exist on this subject.
With respect to the form in which the damages are reported, we think it correct; the damage is annual, and it is more for the interest and security of the corporation that it should be so established, than that a gross sum should have been given for any supposed entire diminution of the value of the land.
*44 The land may hereafter be appropriated to other uses more productive to the owner, or the particular business which is found to have suffered by the erection of the dam, may become less profitable or wholly without value from othei causes ; and if such a state of things should occur, the corporation may on application procure a reduction of the damages.
Upon these views of the case, we are all of opinion that there is nothing wrong in the proceedings of the Court of Common Pleas, and that a certiorari, as prayed for, do not issue.

Petitioners take nothing by their petition.

 See Spring v. Russell, 7 Greenl. 297; Harding v. Goodlet, 3 Yerger, 41

 See Commonwealth v. Breed, 4 Pick. 460

 Where it appears that a resolve of the legislature', directing the location of a road, makes no provision for a “ just compensation ” to the owners of property to be taken for the purposes of the road, agreeably to the provisions of the constitution, the agents of the State in constructing the road are liable to be treated as trespassers by those whose property is so taken, or upon whose property such agents enter for locating the road. Comins v. Bradbury, 1 Fairfield, 447. Compensation in such case should be made or provided for when the property is taken, ibid. But the payment or the assessment of damages is held in New York not to be a condition precedent to the right to open the road. Case v. Thompson, 6 Wendell, 637. See Baker v. Boston, 12 Pick. 184